IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARKDUTCHCO 1 B.V., | |
| Plaintiff, | |
| v. | Civil Action No. 17-1641-CFC |
| ZETA INTERACTIVE CORP., | |
| Defendant. | |

| | |
|---|---|
| ZETA INTERACTIVE CORP., | |
| Third-Party Plaintiff, | |
| v. | Civil Action No. 17-1641-CFC |
| MARKMIDCO S.ÀR.L, | |
| Third-Party Defendant. | |

William M. Lafferty, John P. DiTomo, Zi-Xiang Shen, MORRIS, NICHOLS,
ARSHT & TUNNELL LLP, Wilmington, Delaware; Stephen M. Juris, Alexandra
Verdi, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, New York,
New York

*Counsel for Plaintiff*

Patricia A. Winston, MORRIS JAMES LLP, Wilmington, Delaware; John Du
Wors, Nathan Durrance, NEWMAN DU WORS DURRANCE LLP, Seattle,
Washington

*Counsel for Defendant*

William M. Lafferty, John P. DiTomo, Zi-Xiang Shen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Stephen M. Juris, Alexandra Verdi, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, New York, New York

    *Counsel for Third-Party Defendant*

# MEMORANDUM OPINION

July 31, 2020
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff MarkDutchCo 1 B.V. filed this lawsuit to compel Defendant Zeta Interactive Corp. to pay a $3.45 million Holdback Amount MarkDutchCo alleges Zeta was required to pay under the terms of an Interest Purchase Agreement. D.I. 1. Zeta filed counterclaims for breach of the Interest Purchase Agreement and breach of a Resource Services Agreement. D.I. 26. Zeta also filed third-party claims against Third-Party Defendant Markmidco S.ar.1 that are identical to its counterclaims. D.I. 26.

MarkDutchCo has moved for judgment on the pleadings or, in the alternative, summary judgment. D.I. 33. MarkDutchCo and Markmidco have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) and the doctrine of *forum non conveniens* to dismiss respectively the counterclaims and third-party claims. D.I. 29; D.I. 43. Markmidco has also moved pursuant to Rule 12(b)(5) to dismiss the third-party claims for insufficient service of process. MarkDutchCo and Markmidco also seek by their motions an award of fees and costs. D.I. 33 at 1; D.I. D.I. 32 at 20; D.I. 45 at 12.

I will grant MarkDutcho's motion for summary judgment.[1]  I will also grant MarkDutchCo and Markmidco's motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.  I therefore need not and do not address the issues of *forum non conveniens* and sufficiency of process raised in the motions.  I will deny the three motions insofar as they seek an award of fees and costs.

## I.    BACKGROUND

The following facts are undisputed.  On August 28, 2015, Zeta entered into an Interest Purchase Agreement (the Purchase Agreement) with Markmidco.  D.I. 35 ¶ 1; D.I. 39 ¶ 1.  Pursuant to the Purchase Agreement, Zeta acquired Markmidco's interest in a customer relationship management business (the CRM Business), which consisted of several companies that provided to retailers email and text message marketing, database management, and related services.  D.I. 35 ¶ 2; D.I. 39 ¶ 2.  Zeta agreed to pay, among other things, $23,000,000 in cash for the CRM Business.  D.I. 35 ¶ 3; D.I. 39 ¶ 3.  The Purchase Agreement permitted Zeta to hold back at the closing of the transaction and to retain for up to 18 months and three business days $3,450,000 of the cash payment (the Holdback Amount).  D.I.

---

[1] Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  MarkDutchCo and Zeta each submitted a concise statement of facts, *see* D.I. 35; D.I. 39, and in so doing presented matters to the Court outside the pleadings.  Accordingly, I have treated MarkDutchCo's motion for judgment on the pleadings as a motion for summary judgment.

35 ¶ 4; D.I. 39 ¶ 4.  Pursuant to § 6(b)(v) of the Purchase Agreement and a

subsequent assignment of Markmidco's rights under the Purchase Agreement to

MarkDutchCo, when the eighteen-month-and-three-business-day period expired,

Zeta was obligated to pay MarkDutchCo "an amount equal to the Holdback

Amount[] *less* the Retained Holdback Amounts."  D.I. 1, Ex. A § 6(b)(v).  The

Purchase Agreement defined "Retained Holdback Amounts" as the amount of

indemnified losses "that are finally determined."  D.I. 1, Ex. A § 6(b)(v).

Under the Purchase Agreement, there were three ways for Zeta to obtain a

final determination of its indemnified losses:

> (i)   by "reach[ing] an agreement in writing" with the other parties to the dispute that created the losses;
>
> (ii)  by getting "a final and non-appealable order" from "a court of competent jurisdiction[;]" or
>
> (iii) by getting "a final non-appealable determination" from "an arbitration or like panel[.]"

D.I. 1, Ex. A at § 6(b)(v).

The Purchase Agreement closed on November 2, 2015.  D.I. 35 ¶ 5; D.I. 39

¶ 5.  At closing, Zeta held back the $3,450,000 Holdback Amount.  D.I. 35 ¶ 5;

D.I. 39 ¶ 5.  Pursuant to a side letter agreement between Markmidco,

MarkDutchCo, and Zeta, also dated November 2, 2015 (the Side Letter),

Markmidco assigned its interests in the Purchase Agreement to MarkDutchCo.

D.I. 35 ¶ 6; D.I. 39 ¶ 6.

3

Because the Purchase Agreement closed on November 2, 2015, the eighteen-month-and-three business day period expired on May 5, 2017.  At no time prior to the May 5, 2017 deadline did Zeta obtain a "final determination" of any claims against MarkDutchCo or Markmidco.  D.I. 35 ¶ 13; D.I. 39 ¶ 13.

On May 1, 2017, Zeta informed MarkDutchCo that it planned on withholding the entirety of the Holdback Amount because of various losses it alleged it had incurred.  D.I. 30-1, Ex. 6.  Zeta has refused to this date to pay any portion of the Holdback Amount to MarkDutchCo.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v.*

4

*Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir.

1996).  If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

### B.    Motion to Dismiss

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering Rule 12(b)(6) motions to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs. *Umland v. PLANCO Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).  The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).

6

## III.   ANALYSIS

### A.   MarkDutchCo's Motion for Summary Judgment

On May 5, 2017, Zeta was obligated to pay MarkDutchCo "an amount equal to the Holdback Amount[] *less* the Retained Holdback Amounts." D.I. 1, Ex. A § 6(b)(v). The Purchase Agreement defined "Retained Holdback Amounts" as the amount of indemnified losses "that are finally determined." D.I. 1, Ex. A § 6(b)(v). There is no dispute that Zeta did not obtain a final determination of its indemnified losses prior to May 5, 2017. Thus, under the plain language of the Purchase Agreement, Zeta was obligated to pay MarkDutchCo the entirety of the Holdback Amount. There is no dispute that Zeta did not pay MarkDutchCo the Holdback Amount. Therefore, I find that Zeta breached the Purchase Agreement.

Zeta argues that under § 6(a) it was only required to provide notice to MarkDutchCo that it had an indemnification claim prior to the eighteen-month deadline and that because it sent MarkDutchCo a claim notice on May 1, 2017, it had the right to retain the Holdback Amount. Under Delaware law, however, "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) (citation omitted). In this case, § 6(a) of the Purchase Agreement created a contractual 18-month time bar for claims under the Purchase

7

Agreement and stated that claims under § 6(a) "shall survive beyond the applicable date specified herein with respect to any claim for indemnification under this Section 6(a) . . . in the event a Claim Notice with respect to such claim has been delivered to the applicable Indemnitor on or prior to the Expiration Date." D.I. 1, Ex. A § 6(a) (emphasis in original). But § 6(b)(v) addresses the more specific circumstance of the Holdback Amount and the requirements for retaining the Holdback Amount. Thus, under § 6(a), Zeta's claim notice preserved the claims for indemnification included in the claim notice. But under § 6(b)(v) the claim notice was not sufficient to enable Zeta to retain the Holdback Amount.

Zeta argues that summary judgment is inappropriate because the language of the Purchase Agreement is susceptible to different interpretations and a jury should decide the meaning of the contested portions of the Purchase Agreement. But just because Zeta has argued for a different interpretation of the contract than MarkDutchCo has does not mean that Zeta's interpretation is reasonable or the contract is ambiguous. *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction."). The plain language of § 6(b)(v) supports MarkDutchCo's interpretation of the Purchase Agreement:

> Within three (3) Business Days after the eighteen (18) month anniversary of the Closing Date, Buyer shall pay

8

> to Seller, by wire transfer of immediately available funds
> to an account or accounts designated by Seller, an
> amount equal to the Holdback Amount, *less* the Retained
> Holdback Amounts.

D.I. 1, Ex. A § 6(b)(v) (emphasis in original).  The "shall pay" in § 6(b)(v) clearly

indicates that payment of the Holdback Amount was not discretionary and needed

to be made on May 5, 2017.  Section 6(b)(v) also makes clear that the only portion

of the Holdback Amount that Zeta did not have to pay MarkDutchCo on May 5,

2017 was the "Retained Holdback Amounts," which had to be finally determined.

The Purchase Agreement is not ambiguous; MarkDutchCo's interpretation of

§ 6(a) and § 6(b)(v) is correct.

Finally, Zeta argues that it would be absurd to read the Purchase Agreement

as forcing Zeta to get a final determination on claims before it could retain any

portion of the Holdback Amount.  But it is not absurd to read the Purchase

Agreement as having different requirements for retaining part of the purchase price

than for making other claims under the Purchase Agreement.

## B.    MarkDutchCo and Markmidco's Motions to Dismiss[2]

Zeta's first set of claims allege breaches of the Resource Services

Agreement.  *See, e.g.,* D.I. 26, Counterclaims/Third Party Claims ¶ 18.  Neither

---

[2] Zeta's Counterclaims against MarkDutchCo and Third-Party Claims against
Markmidco are identical.  *See,* D.I. 26, Counterclaims/Third Party.  I will,
therefore, analyze those claims together.

MarkDutchCo nor Markmidco, however, were parties to the Resource Services Agreement, and the Resource Services Agreement only imposed duties on parties to the agreement. *See* D.I. 30-1, Ex. 5 at 1. Accordingly, I will dismiss Zeta's claims for breaches of the Resource Services Agreement.[3]

Zeta's second set of claims allege that MarkDutchCo and Markmidco breached § 3(a)(ii)(A) of the Purchase Agreement, titled "Organization and Existence," which provides:

> CRM Holdco is a Delaware limited liability company duly organized, validly existing, and in good standing under the laws of Delaware. e-Dialog Singapore Private Ltd. is a Singapore limited company duly organized, validly existing, and in good standing under the laws of Singapore. e-Dialog UK Limited is a United Kingdom limited company duly organized, validly existing, and in good standing under the laws of the United Kingdom. Enterprise Marketing Solutions s.r.o is a Czech Republic limited company duly organized, validly existing, and in good standing under the laws of the Czech Republic. At the Closing, each of the Companies will have all requisite corporate power and authority to own, lease and operate its properties and assets (including the CRM Assets) and to carry on the CRM Business as currently conducted.

---

[3] Markmidco argued in the alternative that Zeta's third-party claims should be dismissed under the *forum non conveniens* doctrine because the Resources Services Agreement has a forum selection clause that requires any claims related to the Resource Services Agreement be brought in England. *See* D.I. 45 at 6. Because Markmidco was not a party to the Resource Services Agreement, it cannot invoke the Resource Services Agreement's forum selection clause. In any event, Zeta appears to have abandoned its Resource Services Agreement claims in its answering brief. *See* D.I. 46 at 15 ("Zeta brings this action under the [Interest Purchase Agreement] and therefore is not bound by the [Resource Services Agreement's] dispute resolution provisions or forum selection.")

> Each of the Companies is or as of the Closing will be duly qualified or licensed to transact business and is in good standing in each jurisdiction in which the properties and assets (including the CRM Assets) owned, leased or operated by such company or the nature of the CRM Business conducted by such company makes such qualification necessary, except as would not, individually or in the aggregate, reasonably be expected to have a material adverse effect. Seller has made available to Buyer true, complete and correct copies of the certificate of incorporation and bylaws (or comparable organizational and governing documents) of each of the Companies and the certificates, each as amended to the date of this Agreement, and each as so made available is in full force and effect on the date of this Agreement.

D.I. 1, Ex. A § 3(a)(ii)(A). Zeta's allegation is that e-Dialog Singapore Private Ltd and e-Dialog UK Limited (the Supplier Entities) were not "in good standing" under the laws of their respective countries at the time the Purchase Agreement was signed. *See* D.I. 26, Counterclaims/Third Party Claims ¶ 17. Zeta alleges that the Supplier Entities were not "in good standing" within the meaning of § 3(a)(ii)(A) because (1) "the Supplier Entities failed to comply with privacy and data laws in Singapore and the Personal Data Protection Act," D.I. 26, Counterclaims/Third Party Claims ¶ 17; (2) "the Supplier Entities failed to provide any invoices to Zeta and failed to adjust the payments Zeta made pursuant to the Estimate," *id.* ¶ 20; and (3) "the Supplier Entities regularly misclassified employees as independent contractors," *Id.* ¶ 23. None of these allegations,

11

however, amounts to the Supplier Entitles not being "duly organized, validly existing, and in good standing under the laws of" their respective countries.

"The principles governing contract interpretation are well settled. Contracts must be construed as a whole, to give effect to the intentions of the parties." *Nw. Nat. Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996) (citations omitted). The context of the phrase "duly organized, validly existing, and in good standing" makes it clear that "in good standing" refers to whether the Supplier Entities exist and can do business, not whether they are perfectly compliant with all applicable law. The heading of the section, "Organization and Existence," is further evidence that "in good standing" refers to whether these entities exist and can do business. This reading is also confirmed by other sections of the Purchase Agreement. Section 6(a) refers to the first three sentences of § 3(a)(ii)(A) as "Fundamental Representations"—a description that better fits an assurance that the Supplier Entities exist and can do business than a guarantee that the Supplier Entities are in perfect compliance with all applicable law. D.I. 1, Ex. A § 6(a). And § 3(a)(ii)(F), titled "Compliance with Laws; Sufficiency of Permits[,]" addresses the Supplier Entities' compliance with law applicable to them. *Id.* at § 3(a)(ii)(F). Reading "in good standing" to include compliance with law would render § 3(a)(ii)(F) surplusage and, therefore, that reading is disfavored. *See Veloric v. J.G. Wentworth, Inc.*, No. CIV.A. 9051-CB, 2014 WL 4639217, at *9 (Del. Ch. Sept.

12

18, 2014) ("[Courts] should avoid interpreting a term in an unreasonable way that would yield an absurd result or that would render other contractual language superfluous."). Finally, Delaware courts have interpreted "in good standing" in similar contracts to mean "an entity qualified to do business . . . ." *See Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, No. CV 8075-VCG, 2013 WL 6186326, at *23 (Del. Ch. Nov. 27, 2013). In short, "in good standing" refers to whether the Supplier Entities exist and can do business in their respective jurisdictions, and Zeta has not alleged that the Supplier Entities do not exist or are prohibited from doing business in their respective jurisdictions.

Zeta's third set of claims allege that the Supplier Entities "regularly misclassified employees as independent contractors" and that doing so is a breach of § 3(a)(ii)(K)(3) of the Purchase Agreement. The representations in § 3(a)(ii)(K)(3) are subject to the eighteen-month expiration of representations and warranties the parties agreed to in § 6(a). *See* D.I. 1, Ex. A § 6(a). The parties entered into the Purchase Agreement on August 28, 2015. The parties closed on the Purchase Agreement on November 2, 2015. Zeta's ability to bring claims under § 3(a)(ii)(K)(3) ended eighteen months later on May 2, 2017. The first time Zeta alleged that the Supplier Entities misclassified their employees was when Zeta filed its Answer on December 18, 2019. Because the representations in §

13

3(a)(ii)(K)(3) expired two and a half years before Zeta brought these claims, Zeta

cannot allege a breach of contract pursuant to § 3(a)(ii)(K)(3).

Zeta argues that it preserved this claim by providing MarkDutchCo with an

"indemnification notice before the time bar" and, therefore, under § 6(b)(iv)(A) of

the Purchase Agreement Zeta has preserved its claim that the Supplier Entities

misclassified their employees. *See* D.I. 36 at 8.  Section 6(b)(iv)(A) sets out three

requirements for a proper claim notice under the Purchase Agreement:

> [T]he party electing to seek indemnity on behalf of such
> Indemnified Person shall promptly transmit to the
> Indemnitor a written notice ("Claim Notice") (i) notifying
> such Indemnitor of such Indemnified Claim and
> requesting indemnity on behalf of such Indemnified
> Person with respect to such Indemnified Claim under
> Section 6(b)(i) or 6(b)(ii), as the case may be, (ii) setting
> forth the full name, address for all notices and the
> authorized representatives of such Indemnified Person
> with respect to such Indemnified Claim, and (iii)
> *describing in reasonable detail the nature of the
> Indemnified Claim, including a copy of all papers served
> with respect to such Indemnified Claim (if any) and setting
> forth a good faith, non-binding, preliminary estimate of
> the aggregate dollar amount of actual and potential
> Losses that have arisen or may arise pursuant to the
> Indemnified Claim.*

D.I. 1, Ex. A § 6(b)(iv)(A) (underline in original; italics added).  Although Zeta's

claim notice went into some detail regarding four claims for indemnification, the

claim notice says nothing about any entity misclassifying employees.  *See* D.I. 30-

1, Ex. 6. Thus, Zeta's claim notice does not "describe in reasonable detail the nature of" this claim and does not meet the requirements of § 6(b)(iv)(A).

In the alternative, Zeta argues that its claim that the Supplier Entities misclassified their employees is unaffected by Zeta's "failure to strictly follow formal requirements of the claim notice" because under § 6(b)(iv)(A) "'[f]ailure to provide such Claim Notice promptly shall not affect the right of the Indemnified Person to indemnification hereunder except to the extent the Indemnitor is materially prejudiced by such failure.'" D.I. 36 at 8 (quoting the Purchase Agreement at § 6(b)(iv)(A)). But MarkDutchCo and Markmidco have been materially prejudiced by Zeta's failure to notify them of the nature of Zeta's claims before now. The time bar for Zeta's claims under the Purchase Agreement was May 5, 2017. The first time Zeta alleged that the Supplier Entities misclassified their employees was over two and a half years later. The parties bargained for and agreed to this contractual time bar. For the time bar to have any content, two and a half years late must be too late to bring these claims. Holding otherwise would deprive MarkDutchCo and Markmidco of the benefit of their bargain with Zeta. I will, therefore, uphold the contractual time bar, and I will dismiss Zeta's claim for breach of § 3(a)(ii)(K)(3) of the Purchase Agreement.

### C.     MarkDutchCo and Markmidco's Requests for Fees and Costs

Both MarkDutchCo and Markmidco have requested an award of fees and costs under § 6(b)(i) of the Purchase Agreement. *See* D.I. 32 at 18–20; D.I. 45 at 12. In § 6(b)(i) Zeta agreed to "indemnify, defend and hold harmless Seller . . . from and against all Liabilities incurred by [Seller] arising out of or relating to: (A) any breach of any representation or warranty made by [Zeta] in this Agreement and (B) any breach of any agreement of [Zeta] contained in this Agreement." D.I. 1, Ex. A § 6(b)(i). But § 6(b)(i) is subject to the limitations of § 6(b)(iii), which provides:

> Notwithstanding anything in this Agreement to the contrary, except in the case of fraud and/or any breach or inaccuracy in any Fundamental Representation, Seller shall not be obligated to indemnify, defend and hold harmless, advance, pay or reimburse the Buyer Indemnitees pursuant to Section 6(b)(ii) and <u>Buyer shall not be obligated to indemnify, hold harmless, advance, pay or reimburse the Seller Indemnitees pursuant to Section 6(b)(i), in each case, for any Losses (x) if the aggregate amount of Losses when taken together with all other Losses arising out of the same facts and circumstances, is less than $100,000 (each such Claim, a "De Minimis Claim") or (y) unless and until the aggregate amount of Losses (not including any De Minimis Claims) that would otherwise be payable under Section 6(b)(i) and 6(b)(ii) (as the case may be) but for this Section 6(b)(iii) equals or exceeds $500,000 (the "Deductible"),</u> in which case the applicable Indemnitor shall only be required to indemnify, hold harmless, advance, pay or reimburse the Buyer Indemnitees or Seller Indemnitees, as appropriate, for only such Losses in excess of the Deductible.

16

D.I. 1, Ex. A § 6(b)(iii) (emphasis added).  Neither MarkDutchCo nor Markmidco

has attempted to quantify their losses from litigating Zeta's claims.  Thus, I have

no basis to determine that MarkDutchCo or Markmidco's losses meet the

requirements of § 6(b)(iii) and do not find that Zeta must indemnify MarkDutchCo

or Markmidco under the Purchase Agreement.

Alternatively, MarkDutchCo and Markmidco argue that Zeta should cover

their attorneys' fees because "Zeta expressly agreed in the Side Letter that it would

indemnify and hold Plaintiff and its Affiliates harmless for any and all Liabilities

arising out of, relating to, or caused by the eDialog entities" and "Zeta's own

pleadings repeatedly reference the eDialog Suppliers' alleged violations of RSA . .

. ." D.I. 32 at 19.

The Side Letter provided that

> from and after the Closing, Seller and its Affiliates shall
> bear no Liability arising out of, relating to or caused by the
> Retained eDialog Entities (including, without limitation,
> and for the avoidance of doubt, any operations of the
> Retained eDialog Entities or assets, Contracts or
> employees of the Retained eDialog Entities) and Buyer
> shall indemnify and hold harmless Seller and its Affiliates
> (other than the Retained eDialog Entities) from any such
> Liabilities.

D.I. 35-2, Ex. 4 § 2(c).  When the relevant section is read in its totality, it is clear

that the Side Letter terminates MarkDutchCo and Markmidco's liability "arising

out of, relating to or caused by the Retained eDialog Entities."  It does not alter the

17

American rule and force Zeta to cover MarkDutchCo and Markmidco's attorneys' fees for litigation related to the eDialog entities.

Finally, MarkDutchCo and Markmidco have requested that I exercise the inherent power of the court to award them fees and costs for litigating Zeta's claims. Although I have been troubled by certain arguments and tactics employed by Zeta's counsel in this case, I am not persuaded by the briefing that Zeta's conduct justifies an award of fees and costs.

## IV.   CONCLUSION

For the foregoing reasons, I will grant MarkDutchCo's motion for summary judgment, MarkDutchCo's motion to dismiss counterclaims, and Markmidco's motion to dismiss third-party claims except insofar as the motions seek an award of fees and costs.

The Court will enter an Order consistent with this Memorandum Opinion.

18